John I. BOWMAN, Nancy G. Bowman, Alexander Bowman and Fergus A. Bowman, doing business under the firm name and style of Bowman's Bakery, Plaintiffs,

v.

WEST DISINFECTING COMPANY, Defendant.

Civ. No. 15815.

United States District Court
E. D. New York.

May 6, 1960.

Greenwald, Kovner & Goldsmith, New York City, for plaintiffs. Harry Litwin, New York City, of counsel.

Zipser & Levitt, New York City, for defendant. Sidney N. Zipser, New York City, of counsel.

ZAVATT, District Judge.

The defendant moves pursuant to Rule 54(d), Federal Rules of Civil Procedure, 28 U.S.C., for a review by the court of the action of the Clerk who has refused to tax costs in favor of the defendant and against the plaintiffs. The defendant contends that it was the prevailing party and, as such, is entitled to costs in the total sum of $11,103.90.[1]

This was an action brought by citizens of the State of Virginia against the defendant, a citizen of the State of New York, in which the plaintiffs sought to recover a substantial sum of damages. They claimed that the defendant had breached the implied warranty of fitness for use of a degreaser which the defendant had sold to the plaintiffs. They also claimed that the defendant was negligent in having sold this material to the plaintiffs, with knowledge of the fact that the plaintiffs intended to apply this material on the floor of one room in their bakery. They claimed further that the defendant was negligent in that its salesman, Richard Haskins, directed and participated in the application of the material on the floor of that room; that as a result of the negligence of the defendant and the breach of its implied warranty of fitness for use, the plaintiffs' bakery and bakery products were permeated by an offensive odor for a substantial period of time and, as a result, the plaintiffs' business fell off considerably and they suffered substantial loss of profits over a period of approximately 2½ years after the event.

The case was tried to a jury in two stages. First, testimony was adduced by both the plaintiffs and the defendant as to whether or not the defendant had been so negligent and as to whether or not the defendant had breached an implied warranty that the material was fit for the purpose to which the plaintiffs intended to put it. During the first stage of the trial the jury heard testimony as to the effect of the odor upon the bakery plant of the plaintiffs, including the bakery products. There was testimony to the effect that the bakery products had an offensive odor and that large quantities of the plaintiffs' products were returned by customers for a period of time. When all of this evidence was in, the court charged the jury as to the applicable law relating to liability; the jury retired and thereafter returned a verdict in favor of the plaintiffs. Thereupon, the trial proceeded to its second stage: the question of damages sustained by the plaintiffs.

The plaintiffs attempted to prove damages by establishing a base period preceding the event and then by comparing their profits during this base period with their diminished profits over a period of approximately 2½ years following the event. After all of the evidence was in on the question of damages, the jury retired and thereafter returned a verdict in favor of the defendant. These verdicts are not inconsistent. The verdict for the defendant on the question of damages merely means that the plaintiffs had failed to sustain their burden of proving that any portion of their loss of profits, following the event, was attributable to the negligence of the de-

1. The defendant's Bill of Costs includes:

| | | | |
|---|---|---|---|
| 1. | Daily transcript of testimony | | $9,339.75 |
| 2. | Attendance of 9 witnesses (including mileage, per diem, and subsistence) | | 424.00 |
| 3. | Depositions: | | 1,340.15 |
| | a) 3 witnesses examined by plaintiff | $501.35 | |
| | b) 3 witnesses examined by defendant | 482.40 | |
| | c) 2 plaintiffs examined by defendant | 356.40 | |
| | | Total | $11,103.90 |

fendant or to its breach of an implied warranty of fitness for use.

Thereafter, and on March 4, 1960, without any instructions from the court and on his own initiative, the Clerk entered judgment in favor of the defendant with the notation that "judgment for bill of costs when taxed be docketed." Nevertheless, when the defendant submitted its proposed bill of costs, with notice of taxation, the Clerk refused to tax costs as requested by the defendant.

■ Rule 54(d) of the federal rules provides that in the absence of any express provision in a federal statute or rules "costs shall be allowed as of course to the prevailing party *unless the court otherwise directs.*" (Emphasis added). The clear import of this rule is that the allowance of costs to the prevailing party is within the sound discretion of the court.[2]

This case is novel, however, in that the court must determine who was the "prevailing party" before it exercises its discretion in deciding what costs, if any, to allow to the "prevailing party." In Wilson v. Eberle, D.C.1955, 18 F.R.D. 7, 9, 15 Alaska 651 the plaintiff brought an action for false imprisonment which was tried to a jury. The court submitted specific questions to the jury (1) as to liability and (2) as to damages. In answering the questions, the jury found for the plaintiff as to liability but that the plaintiff was not entitled to any amount as damages. The defendant moved pursuant to Rule 58, Federal Rules of Civil Procedure, for entry of judgment in favor of the defendant and against the plaintiff, claiming that since the action was one basically for damages and no damages were awarded by the jury, the verdict of the jury should be construed as a verdict for the defendant.[3]

The court denied the defendant's motion and directed that judgment be entered in favor of the plaintiff and against the defendant for nominal damages in the sum of $1 together with plaintiff's costs to be taxed by the Clerk:

"It was clearly the intention of the jury to find in favor of the plaintiff on the essential issue that the plaintiff did suffer a technical false imprisonment at the instance of the defendant, but that he had not been damaged thereby * * *.

"The rule is well established that nominal damages are recoverable where a legal right is to be vindicated against a wrong or invasion of that right which has produced no actual loss or damage; for the law infers some damage from the invasion of that right. Such nominal damages are awarded, not as compensation for the injury, but merely in recognition of the plaintiff's right and of the technical invasion thereof by the defendant.[4]

In Chesapeake & Potomac Tele. Co. v. Clay, 1952, 90 U.S.App.D.C. 206, 194 F. 2d 888, evidence was completely lacking on the question of compensatory damages for pecuniary loss. Nevertheless, it was established that the defendant had breached its contract with the plaintiff. The court held, therefore, that the plaintiff was entitled to nominal damages. It remanded the case to the District Court with directions that judgment be entered in favor of the plaintiff and against the defendant in the sum of $1, with costs.

In Atlantic Oil Producing Co. v. Masterson, 5 Cir., 1929, 30 F.2d 481 the plaintiff proved that the defendant had breached its contract but failed to prove any recoverable damages. The trial judge directed a verdict for nominal damages only in favor of the plaintiff.

---

2. In determining whether a court has exercised a sound discretion, the prevailing practice of the court is often considered. See 3 Barron & Holtzoff, Federal Practice and Procedure § 1195 (1958).

3. It might have been advisable in the instant case for the parties to have made a similar motion for an order clarifying the judgment.

4. Wilson v. Eberle, 18 F.R.D. at page 9.

Upon appeal by the defendant, the judgment was affirmed.

■ On the facts in the instant case I hold that the defendant was not the prevailing party; that the plaintiffs were the prevailing party; that the Clerk should not have entered judgment in favor of the defendant and against the plaintiffs. I hereby direct the Clerk to correct the error by cancelling the entry of judgment in favor of the defendant and by entering judgment in favor of the plaintiffs and against the defendant. Rule 60(a), Fed.R.Civ.Proc.

Even if the defendant were to be regarded as the prevailing party, the court would not allow costs as requested by the defendant.

### Daily Transcript

■ The trial of this case commenced on January 20, 1960 and was not concluded until March 4, 1960. The attorneys had informed the court that, in their estimation, the entire trial would not require more than six days. In my opinion the trial should not have lasted more than five days. This painful, protracted trial was due to lack of preparation[5] (mainly on the part of the attorney for the defendant), unduly prolonged cross-examination of witnesses by the attorney for the defendant, not only as to relevant, but also as to irrelevant matters. The attorney for the defendant persisted in pursuing lines of inquiry despite the rulings of the court. Too much of the cross-examination of witnesses by the attorney for the defendant concerned itself with minutiae and not with substance. This tiresome, useless cross-examination was due among other things, to the fact that the defendant had ordered daily copy of the transcript from which, on each succeeding day, the attorney for the defendant conducted the type of cross-examination to which I have referred.[6]

28 U.S.C. § 1920 authorizes the taxation as costs of the fees of the court reporter for all or any part of the stenographic transcript "necessarily obtained for use in the case." In the instant case the attorney for the defendant ordered daily copy of the transcript on his own initiative. The court did not direct the attorneys for the respective parties to order a transcript at either daily copy or normal rates. Nor did the court even suggest it. The attorney for the plaintiffs was able to conduct the trial without a transcript. The court, through custom, is given a copy of the transcript by the reporter when a party orders a copy. Before these complimentary copies were furnished, the court was able to follow the case and to take adequate notes and it would have continued to do so. The attorney for the defendant ordered the transcript for his own convenience and use. Because of the extent to which the trial was prolonged by the tactics already referred to, the transcript ran to 4042 pages, which, apparently, at daily copy rate, cost the staggering sum of $9,339.75. The court refuses to tax any part of the cost of this

5. Although the plaintiffs' claim arose in the State of Virginia and, therefore, the substantive law of Virginia was to be applied, the attorneys commenced the trial of this case without submitting to the court memoranda on the law of Virginia. In response to repeated requests and demands for such memoranda, the attorney for the defendant submitted piecemeal during the course of the trial eight memoranda, few of which were of help to the court.

6. In his supplemental memorandum, the attorney for the defendant argues that the case would have been longer and more difficult had he not ordered the trial minutes and that the trial minutes helped to advance the orderly administration of justice, which, of course, is the goal of all trials. In fact, the opposite result was achieved. The case could not have posibly lasted longer than it did; it could not have been more difficult; and the orderly administration of justice could not have been more disregarded and flouted. Without exaggeration, I have never observed any trial as unduly and as unjustifiedly prolonged as this.

transcript as costs for the reasons that:

1.  The transcript was not ordered by the court;

2.  It was ordered by the attorney for the defendant for his own convenience and use; and

3.  The transcript is excessively long.[7]

### Fees and Disbursements of Witnesses

██ The defendant's memorandum seeks to support the bill of costs insofar as it provides for mileage of witnesses at 5¢ per mile; a $2 per diem witness fee and $3 a day for subsistence of the witness Haskins. The attorney for the defendant cites as his authority 28 U.S. C.A. § 600c. This is a reference to the 1940 Code, which became § 1821 in the 1948 Revision of Title 28. It was amended several times since then and now provides for an allowance of $4 for each day's attendance by a witness; mileage at the rate of 8¢ per mile and, under certain circumstances, for an additional allowance of $8 per day for expenses of subsistence. It should not have been necessary for Haskins to be in attendance for more than five days; nor for William Thompson and Alexander Katz to be in attendance for more than five days. George Weinstein, whom the defendant lists as a witness in the bill of costs, was the accountant who examined the books of the plaintiffs in behalf of the defendant for approximately 14 days. He was called to the stand by the attorney for the defendant after the court had ruled, many times, that the drawings of the plaintiffs were not to be considered

in ascertaining the plaintiffs' loss of profits. To the extent that the defendant sought to make Weinstein a witness, no costs would be allowed for his attendance, not because he had not been subpoenaed, but because his testimony would not have been relevant and material. The allowances for witnesses are based on the premise that their testimony be relevant and material.[8]

### Depositions and Copies

The defendant took the depositions of William Burns, Charles E. Mickey, John Mays, and the plaintiffs John and Alexander Bowman. Of these, only the depositions of Burns and Mays were received in evidence. The remaining witnesses testified during the trial. Without any supporting facts, defendant claims to have paid $838.80 for the transcripts of these depositions.[9] The defendant also ordered copies of the transcripts of depositions of Katz, Thompson and Haskins, taken by the plaintiff. The cost of these copies is set at $501.35.

Both the code and rules are silent as to whether the court may allow the prevailing party the cost of transcript of depositions taken before trial. There are cases indicating that the costs of such transcripts are generally allowed for those depositions which are read in evidence.[10] Some courts are of the opinion that the cost of such depositions should be allowed even where they are not received in evidence at the trial, if the court finds that the taking of the deposition reasonably seemed necessary at the

7.  See Firtag v. Gendleman, D.C.D.C.1957, 152 F.Supp. 226; Republic Mach. Tool Corp. v. Federal Cartridge Corp., D.C. Minn.1946, 5 F.R.D. 388, affirmed, 8 Cir., 1948, 168 F.2d 416.

8.  See Kemart Corp. v. Printing Arts Research Laboratories, Inc., 9 Cir., 1956, 232 F.2d 897, 57 A.L.R.2d 1234; Bank of America v. Loew's Intl. Corp., D.C. S.D.N.Y.1953, 163 F.Supp. 924.

9.  The bill of costs does not indicate how much of this sum is applicable to the depositions read in evidence. A figure of $482.40 is given for three depositions, which includes the 2 read in evidence.

10.  See Harris v. Twentieth Century Fox Film Corp., 2 Cir., 1943, 139 F.2d 571; Manley v. Canterbury Corp., D.C.Del. 1955, 17 F.R.D. 234; Hancock v. Albee, D.C.Conn.1951, 11 F.R.D. 139. But cf. Banks v. Chicago Mill & Lumber Co., D.C.E.D.Ark.1950, 106 F.Supp. 234.

time it was taken.[11] There is also respectable authority for the proposition that the cost of the transcript of a pretrial deposition should not be allowed if the deposition was taken only as part of the attorney's investigation, i. e. as part of thorough preparation for the trial.[12] The rationale behind this position has been well stated: "If these fees were taxed, little justification would remain for the court to refuse to tax all expenses incurred by plaintiff in investigating the case and determining the facts." [13]

■ Although the federal rules have liberalized pre-trial discovery it does not necessarily follow that the cost thereof should be allowed to the prevailing party. We have not reached the point where a prevailing party is entitled to recover all the cost of the trial and its preparation, as have our English brethren. Unless and until we adopt the English concept, I am in accord with the view that, with rare exception, the court should not exercise its discretion by allowing to the prevailing party the cost of pretrial discovery.[14]

■ This is a novel case. It is not covered by federal statute or rule. Nor have there been similar or closely similar situations and circumstances in a sufficient number of cases to result in a rule of decision which should be adhered to by the court in the exercise of a sound discretion. See Farrar v. Farrar, D.C.W.D. Ark.1952, 106 F.Supp. 238, 242. In the peculiar circumstances of this case the court is of the opinion that it is exercising a sound discretion by not allowing either party to tax costs but, rather, by requiring each party to bear the burden of its own costs.

The action of the Clerk in refusing to tax costs in favor of the defendant and against the plaintiffs is hereby affirmed and the Clerk is hereby directed to enter judgment in the sum of $1 in favor of the plaintiffs and against the defendant without costs.

11. See Cooke v. Universal Pictures Co., D.C.S.D.N.Y.1955, 135 F.Supp. 480; 3 Barron & Holtzoff, Federal Practice & Procedure § 1197 (1958); 6 Moore, Federal Practice § 54.77 [4] (2d ed. 1953).

12. See 6 id. at 1361 n. 17. This position has been hardened into a rule in at least three District Courts. See Fischer & Porter Co. v. Brooks Rotameter Co., 21 Fed.Rules Serv. 54d.11, Case 2 (E.D. Pa. June 15, 1955); 3 Barron & Holtzoff, supra note 11 at 60 (D.Mont.); Republic Mach. Tool Corp. v. Federal Cartridge Corp., D.C.Minn.1946, 5 F.R.D. 388, affirmed 8 Cir., 1948, 168 F.2d 416.

13. See id. 5 F.R.D. at 389. See also Andresen v. Clear Ridge Aviation Inc., D.C. Neb.1949, 9 F.R.D. 50, 56–57.

14. Even in those districts where the cost of an original deposition is taxable despite the fact that it was not received in evidence, the prevailing party may not be entitled to charge the cost of obtaining a copy of a deposition taken by its adversary. Cf. Firtag v. Gendleman, D.C. D.C.1957, 152 F.Supp. 226. Under no circumstances, therefore, would the defendant be entitled to tax the cost of obtaining copies of the depositions of Katz, Thompson, and Haskins, amounting to $501.35.